KENNON, Judge.
Plaintiff is the insurer and subrogee of John D. Youngblood, whose Buick automobile was damaged in a collision with a trolley car owned and operated by defendant. Alleging that the collision was the result of the excessive and dangerous speed of the trolley; the failure of its operator to maintain a proper lookout; to keep his bus under control, and to take other action to avoid the collision, plaintiff asked for damages in the amount of $1467.
Defendant admitted the occurrence of the accident, but asserted that same was caused solely by the negligence of plaintiff’s subrogor, Youngblood, in proceeding from a stop street into a right-of-way street without first coming to a full stop; in failing to keep a proper lookout; in making a left turn without first ascertaining that the way was clear and in driving along Wilkinson 'Street in the City of Shreveport at a speed in excess of the eighteen miles an hour limit provided by *411 city ordinance. In the alternative, in the event the court should find the operator of the trolley negligent, defendant pleaded the contributory negligence of Youngblood as a bar to plaintiff’s recovery.
From a judgment of the District Court rejecting its demands, plaintiff prosecutes the present appeal.
The collision occurred at the intersection of Wilkinson Street and Line Avenue in the City of Shreveport, Louisiana at approximately '5:30 p. m. on a rainy afternoon in September, 1949. The Buick automobile driven by plaintiff’s insured was traveling west on Wilkinson Street, intending to proceed westward across its intersection with Line Avenue. As the Buick entered the intersection, defendant’s trolley was proceeding southward on Line Avenue, intending to pass through the same intersection. Line Avenue is a right-of-way street. The driver of the Buick testified that he noticed the “stop” sign on Wilkinson at the intersection and that he stopped before entering and observed headlights to his left approximately one ■hundred twenty-five feet away and headlights to his right about two hundred feet away; that he proceeded into the intersection; that when he looked to his left again, he still had plenty of space, but when he looked again to the right, he saw “the trolley right on me” and only a car length away; whereupon, he took a good grip on the steering wheel and gave the car the gas; that the collision took place after his car had passed the center line of Line Avenue and when the trolley was in the extreme right lane of Line Avenue. He estimated his own speed at ten or fifteen miles an hour and did not observe at what speed the trolley was proceeding.
The operator of the trolley testified that as Youngblood approached Line Avenue, he slowed down as if to stop but instead of stopping, he started up with quickening speed, whereupon he sounded the horn on the trolley, applied his brakes, and after sliding approximately ten feet, struck the Buick, whose wheels had started to spin on the wet pavement. At the time of the collision, the Buick was in the trolley’s right lane of Line Avenue. The Buick driver was attempting to make an avoiding move to the left and the trolley driver was turning to the right and proceeding slightly downgrade. The trolley driver testified that the trolley lights were on and that the Buick lights were not on.
In support of Youngblood’s testimony plaintiff introduced only two witnesses. The first, George N. Hill, examined the Buick after the accident and testified that it received a solid blow in the center on its right side.
The second witness, Mr. Don L. Baker, a member of the Shreveport Bar, happened to be a passenger in the trolley and was seated near the front. He observed the Buick automobile entering the intersection and stated that “almost simultaneously the trolley operator applied his brakes” and that a horn sounded “all about the same time.” He testified that at the time he noted the position of the car and considering the position of the' trolley, he knew that an accident “had to happen.” He gauged the speed of the Buick to be ten or fifteen miles per hour. He fixed the trolley’s speed at a minimum of twenty-five miles an hour, stating that the trolley was going at its usual speed. There was a slight drizzle, sufficient to cause the loss of the crease in hi:s trousers while he was waiting for another trolley. His impression was that the trolley driver, as he applied his brakes, pulled somewhat to the right or west and that after the collision, the cars were in the southwest comer with the left front comer of the trolley impacted in the center of the Buick on the right side. He estimated that the trolley traveled fifteen to eighteen feet after the brakes were applied prior to the collision, and that the Buick was pushed possibly ten or twelve feet from the point of impact.
Besides the driver, defendant introduced three of the trolley passengers, Miss Chloe Vaughan, secretary to an executive of the Arkansas Louisiana Gas Company, Mr. J. B. Paker, an executive of the Buckelew Hardware Company, and Mrs. H. W. Mann, an employee of the Louisiana Engraving Company. All described the speed of the trolley as moderate, one using the *412 words “slow to moderate.” All testified that the trolley operator applied his brakes and blew his horn in an effort to avoid the Buick, which proceeded out into the intersection.
We do not find that the record supports any of the specific acts of negligence charged in the petition. Plaintiff’s own witness described the trolley speed as usual, the other witnesses as moderate. The driver promptly applied his brakes after observing the dangerous situation created by the Buick’s proceeding into the intersection against the stop sign and into the path of the trolley on the right-of-way street.
If we should assume that the trolley driver was negligent in proceeding into the intersection, plaintiff’s recovery would still be barred by the contributory negligence of the driver of the Buick automobile. If we accept his own testimony that he brought the car to a stop and looked both ways before entering the intersection, it follows that he was negligent in proceeding into the right-of-way street when there was insufficient time for him to clear the intersection ahead of the approaching trolley, which was plainly visible and being operated on the favored street at a moderate rate of speed. If we accept the testimony of the trolley driver, the only other witness who closely observed the Buick, it follows that the driver of the Buick was negligent in slowing down a,s if to stop and then speeding up into the intersection and into the path of the trolley after his slowing action had misled the driver into believing that he was going to respect the right-of-way enjoyed by vehicles using Line Avenue over those on Wilkinson Street.
Plaintiff has cited the case of Gauthier, v. Fogleman, 50 So.2d 321, in which the Court of Appeal of the First Circuit approved a statement made in the written opinion of the District Judge that Mrs. Gauthier was justified in entering the right-of-way street because she would have had plenty of time to negotiate the intersection had the approaching automobile been traveling at a reasonable rate of speed. The Court awarded judgment against the driver who collided with the Gauthier car because he was driving at an excessive and illegal speed. We agree with that principle of law, but in the case before us, the evidence shows that the trolley was being operated at a reasonable and moderate rate of speed, and Youngblood was not justified in entering the right-of-way street when he did not have time to clear same ahead of the moderately moving trolley.
The judgment of the District Court is clearly in accord with the record, and it is affirmed, with costs.